

UNITED STATES DISTRICT COURT:

NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| DAWNETTA WHITE, | ) |
| | ) |
| AN INDIVIDUAL-PLAINTIFF | ) |
| | ) |
| | ) |
| VS | ) |
| | ) |
| | ) |
| DEPARTMENT OF CHILDREN AND FAMILY | ) |
| SERVICES et al, a public entity | ) |
| KAREN POWELL, FELICA SHELL, STEPHANIE | ) |
| COVARRUBIAS, GLADYS CROOM, JUDITH | ) |
| HARDIN, DEVIN DITTRICH,  (ALL | ) |
| INDIVIDUALLY) | ) |
| | ) |
| DEFENDANTS | ) |

**THIRD AMENDED COMPLAINT**
**HON.JOHN ROBERT BLAKEY**
**CASE NO. 1:15-CV-05278**

# FILED

OCT 0 3 2016

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

Plaintiff, **DAWNETTA WHITE** respectfully represent and allege as follows:

### JURISDICTION AND VENUE

1. **DAWNETTA WHITE** or (**Dawn**) brings this civil rights lawsuit pursuant to 42:1983 to redress deprivation by Defendants, at all times herein acting under color of state law, of rights secured to plaintiff under the United States Constitution, including the First, Fourth, and Fourteenth Amendments, and under federal and state law where applicable.

2. Jurisdiction is conferred on this Court by 28 U.S.C. sections 1343 (a)(3) and 1343(a)(4), which provide for original jurisdiction in this Court of all suits brought pursuant to 42 U.S.C.1983. Jurisdiction is also conferred by 28 U.S.C. Section 1331 because claims for relief derive from the United States Constitution and the laws of the United States. This Court has supplemental jurisdiction over those claims of Plaintiff based on *state laws, pursuant to 28 U.S.C.* section1367.

3. Because the acts and omissions complained of herein occurred in the County of Cook and it is believed that all living parties currently reside in the County of Cook Venue is properly in the District Court for the Northern District of Illinois, Eastern Division.

**PARTIES**

4.  At all times relevant to this compliant, Plaintiff Dawnetta White, and her child K.W. resided in the County of Cook, in Illinois and maintaining a family as a same sex lesbian parent to her only child.

5.  At all times applicable herein, Defendants Department of Children and Family Services and One Hope United was and is a public entity, (DCFS or Department of Children and Family Services) (OHU or One Hope Untied) is and was a public entity.

6.  At all times applicable herein, Defendant (The City of Blue Island, police Department) was and is a public entity, or subdivision of the County of Cook in the State of Illinois.

7.  At all times applicable herein, The Defendant Department of Children and Family Services and One Hope United was and is a subdivision or entity of the County of Cook in the State of Illinois.

8.  Plaintiff is informed and believes and thereon alleges, that at all times relevant herein, Defendant, Judith Hardin is and was an Individual residing in the County of Cook and employed by (DCFS). On information and belief Judith Hardin Drafted the juvenile petition was filed on October 16, 2013 as to the child K.W. the petition is the initiating document which is used to open a case in the juvenile dependency court. The petition is required by statute to be verified under penalty of perjury.

9.  At all times mentioned and with respect to the specific matters alleged in this compliant, Plaintiff is informed and believes that each Defendant was a parent, subsidiary, affiliate, alter ego, partner, agent franchiser, franchisee licensor, principal, and or joint venture of each or the remaining Defendants and was at all times acting within the course and scope of such agency, service, employment, control and joint venture, and each Defendant has ratified, approved, conspired in , profited from and/or authorized the acts when having the power and /or duty to do so, with full knowledge of said acts.

10. At all times mentioned herein, each of the above identified Defendants was a social worker, case worker, agent, psychologist supervisor and coordinator of the public entities' Department of Children and Family Services or One Hope United both are public entities' as the case maybe, and was acting under color of law with in the course and scope of their respective duties in doing the things and acts herein alleged.

11. As of July 8, 2013, Dawnetta white and her child K.W. Constituted a family unit entitled to Constitutional protection including but not limited to, the right to live together free of unwarranted governmental interference, the right to familial privacy, and the right as a parent to reasonably direct the upbringing of her child. In addition, Plaintiff enjoyed separate and distinct right to live together without undue governmental, interference as well as the right to not be subjected to deceptive acts undertaken by government agents in the juvenile court process, i.e., the use by government officials of fabricated evidence, the suppression of exculpatory evidence, perjury, and the like.

12. At all times relevant herein, Defendant Judith Hardin is and was an individual residing on information and belief in the County of Cook, and employed by Department of Children and Family Services as a Case Worker or Social Worker, under 42:1983 this Individual shall be sued under her own individual capacity.

13. At all times relevant herein, Defendant Felicia Shell is and was an Individual residing on information and belief in the County of Cook, and employed by One Hope United as a Case

14. Worker or Social Worker, under 42:1983 this Individual shall be sued under her own Individual capacity.

15. At all times relevant herein, Defendant Karen Powell is and was an Individual residing on information and belief in the County of Cook, and employed by One Hope United as a Coordinator, under 42:1983 this Individual shall be sued under her own Individual capacity.

16. At all times relevant herein, Defendant Gladys Croom is and was an Individual residing on information and belief in the County of Cook, and employed by /or Contracted by One Hope Untied as Psychologist, under 42:1983 this Individual shall be sued under her own Individual capacity.

17. At all times relevant herein, Defendant Stephanie Covarrubias is and was an Individual residing on information and belief in the County of Cook, and employed by One Hope United as a Case Worker or Social Worker, under 42:1983 this Individual shall be sued under her own Individual capacity.

18. At all times relevant herein, Defendant Devin Dittrich is and was an individual residing on information and belief in the County of Cook, and employed by One Hope United as a Social Worker Supervisor, under 42:1983this Individual shall be sued under her own Individual capacity.

**General Allegations Of Facts**

19. On July 7, 2013 Defendant Judith Hardin Rang the Plaintiffs door bell and informed the plaintiff that she was investigating a hot line call that was received by the plaintiff's parents that child K.W. had been spanked.

20. The Defendant asked the Plaintiff to let her into the home, once the defendant entered the plaintiff's home, Defendant informed Plaintiff she received a hot line call and began to read the report she received. The Defendant then asked the Plaintiff to get her child from his bedroom where the minor had been playing with his toys.

21. The Defendant then asked the plaintiff to remove her child's clothes and also his underwear, the plaintiff's child K.W. began to shake and was very nervous about the Defendant looking at his naked body.

22. As the plaintiff removed her child's underwear as instructed by the defendant the six-year-old child K.W. began to cover this private parts with his hands the plaintiff then stated to the defendant can I at least put my baby's underwear back on the defendant then stated yes you can put his pajamas and underwear back on now, after the plaintiff dressed her child, the child K.W. ran back into his bedroom.

23. The Defendant then stated to the Plaintiff I can tell that you love your son he has bruises on his body and you need to take him to the doctor tomorrow or make an appointment for the child to see his doctor.

24. The Plaintiff then stated to the Defendant that she would take her child to see his doctor the very next day once she gets off work and picks the child up from his daycare the Defendant then stated to Plaintiff that was fine and gave the plaintiff a card to contact her after the child K.W.

25. The Plaintiff then stated that she would take her child to the doctor like the defendant demanded.

26. The plaintiff stated to the defendant that she called the police prior to the hotline call because on July 4, 2013 she had to work and got off and her brother had watched her son and took the minor to his Grandfathers house and when the sibling dropped the plaintiff her son, she gave her child a bath and was preparing dinner and caught the child doing a sexual act on himself.

27. Back in 2007 the plaintiff called the police on her father, after the plaintiff's father took the plaintiff and her baby grocery shopping for food items January of 2007 the grandfather insisted the plaintiff went into the store and buy her food while he kept the child in the vehicle with him. When the plaintiff returned to the vehicle she noticed her father moved the vehicle across the parking lot in a secluded area of the parking.

28. As the Plaintiff approached the vehicle and opened the door struggling with groceries the Plaintiffs father had her baby on his lap moaning and grinding the baby's pamper, then the grandfather took the Plaintiff and her baby back to his house the grandfather then took the baby into his bedroom and closed the door.

29. The Plaintiff then stated to the Defendant that her child had been molested by her father again and continued to tell the defendant about the recent sexual abuse.

30. On July 4, 2013 the minor was caught penetrating his finger in a motion in his mouth and the plaintiff asked her child where he learned that and he said grandpa. I was at grandpa's house with uncle, grandpa told me to suck my thumb the child then said grandpa had his hands in his shorts and was moving it around with his hands and told me to watch him do it and keep my thumb in my mouth.

31. The plaintiff then told the defendant that made her upset that her child did not tell her because she told the child that his grandpa did bad touch on him before and to always tell her if anyone does bad touch or makes him touch them that's bad and you have to tell mommy if anyone tries that the plaintiff stated to the defendant what she warned her child about.

32. The plaintiff also stated to the defendant that after her father molested the child in 2007 he was one-year-old and could not talk to tell police what had been done to him by his grandfather the plaintiff kept her child away from the molester for, five years until she was at work and her brother took the child to the grandfather's house the plaintiff had no idea her child was exposed to him.

33. The plaintiff then told the defendant that she disciplined her child for not telling her about it, plaintiff stated she called the DCFS hotline and they gave her number to a private detective and the detective made an appointment for the child to be interviewed at the Chicago Children's Advocacy Center.

34. The Plaintiff told the Defendant that she called her father and told him that the child K.W. was not a one-year-old anymore and now he can talk and tell what the grandfather was doing sexually to him. The Plain tiff then told her father he was going to go to jail this time.

35. The Plaintiff then called her mother and told her what her child said, what grandpa made him do. The Plaintiff states her mother was always in denial about the sexual abuse the Plaintiff then stated her father did the same thing to her as a child made her suck his penis as he was making the child K.W.

36. The plaintiff told the Defendant she was fearful of her father not so much when she found out he was in contact with her son prior and made him do such an awful thing he would remember at six years old.

37. The Defendant then repeated again to the Plaintiff to take the child to see his doctor and then the defendant left the home of the plaintiff and her child.

38. On July 8, 2013 the very next day the Plaintiff took her child to school and went to work then around 11:00 am the Defendant Judith Hardin called the Plaintiff and stated to her to pick her son up from the Harvey DCFS office once she gets off work the Plaintiff then screamed in the phone why is my child there I took him to school why is he there at DCFS?

39. The defendant then stated the Plaintiff's mother took the child out of his school and took him to the Blue Island police station and the defendant stated that the plaintiff needs to pick the child up from the DCFS office and defendant told the Plaintiff she can pick her child up after she leaves work.

40. The Plaintiff was then informed by the Defendant that her Mother and Father were the ones that placed the hotline call on July6, 2013 the plaintiff left work and headed to the DCFS office to pick up her child as the Defendant instructed.

41. The plaintiff arrived at the DCFS office to pick up her son once the Plaintiff reached the office the defendant brought her child to the lobby area the child and the plaintiff began to cry and hug each other the child then told his mother he was hungry and had not ate anything , the Defendant then took the child to a back room the child began to scream Mommy,  Mommy I want to go home as he was being taking by the Defendant away still crying and placed into a small room across from the Defendants office.

42.  The Plaintiff then stated to the Defendant you told me to come pick up my child what's going on why are you doing this to me, you told me I can come pick up my child the Plaintiff shouted at the Defendant the Plaintiff was then told to sit in the lobby, which the plaintiff sat in the lobby until the DCFS office closed.

43. The Defendant then called the Plaintiff on her cell phone and asked her did she have a good friend who would keep her child for a couple of days the Plaintiff then stated again you told me to come out here and pick up my child the Plaintiff began to cry and was confused in panic.

44. The Defendant then explained that she was starting a safety plan and the child will need to be with a friend for a couple of days, the Plaintiff then, gave the Defendant a phone number of her best friend the Defendant stated she had to run a background for everyone in the friend's house first.

45. The Defendant then called the plaintiff outside to get her vehicle were her child was in the back seat the Defendant then stated she was taking the Plaintiffs child to the hospital to see a doctor

the Plaintiff then stated that's what you asked me to do yesterday the defendant then stated his is in DCFS custody now.

46. The Plaintiff now learned that in February 2016 that on July 8,2013 as her child was Illegally seized from his school, the child was taken to the Blue Island police department and was illegally interviewed, question and photographed by the Defendant R/Sgt Ismeal Haro without" no prior consent" nor authorization from the child's K.W. parent the Plaintiff Dawnetta white as the Plaintiff received this report from her case file from her public Defender and was made aware.

47. The plaintiff the Defendant and her child arrived at Metro south hospital in Blue Island IL the Defendant then admitted the plaintiff child into the emergency when the doctor called the child's name the plaintiff proceeded to walk with them both in the room waiting for the child then the was plaintiff was stopped by the defendant Judith Hardin and was told she was not allowed to enter the room and for the Plaintiff to wait in the lobby until the examination was over the Plaintiff then waited in the lobby as told by the Defendant.

48. The Defendant then took the plaintiff to her house and drove the child to the Plaintiffs friend's house and the defendant told the plaintiff not to have psychical contact with her child the Plaintiff called her son that night the child was in very much distress he was not eating or sleeping while at the friend's house the Plaintiff called her child and sang song to him to help him relax and to sleep.

49. On July 10, 2013 the Plaintiff received a call from the Defendant her child was being removed from her friend's house and would be placed with the plaintiff mother Rose White the plaintiff explained that that would be dangerous due to what her father just had did to her son on that July 4, 2013 the plaintiff begged the Defendant to let her child continue to stay with her friend.

50. The Defendant then expressed that the Plaintiffs mother Rose White expressed to her that she was not comfortable about the Plaintiff having her child around all of her gay friends and she explained the child would be better off staying with her.

51. The Defendant Karen Powell then stated to the Plaintiff look I handled that for you (firing Keith wheeler) and if it still affects you, you need to speak with your therapist about it; it's the past get over it.

52. On March 22, 2013 The Plaintiff was sent to a Private apartment by one hope United to have a psychological test done by a Doctor named Gladys Croom the next Defendant.

53. The Plaintiff was then placed in a small bed room for a five-hour period, on a Saturday during the evaluation the Defendant Gladys Croom began to ask the plaintiff about the sexual abuse she endured as a child and to tell her about it in full detail what happened.

54. The Plaintiff began to cry feeling embarrassed, and humiliated because while explaining the sexual abuse the Plaintiff could now hear people in the next bedroom laughing and could smell weed coming from the next bedroom, the Defendant then yelled at the Plaintiff to stop and crying and shut up before she puts that the Plaintiff is Bipolar on her evaluation report.

55. During the evaluation the Defendant began to tell the Plaintiff that she too was in fact a lesbian Plaintiff(never) told this Defendant that she was a lesbian, Defendant then stated to the Plaintiff she had a mental illness when she was in college and how a parent killed their child and was feeding the child hot chips.

56. On March25, 2013 The Defendant met the Plaintiff at One Hope united to giver a copy of her evaluation report then the Defendant the told the Plaintiff that she was Bipolar and schizophrenic which were false allegations the Plaintiff mother reported to DCFS on the hotline call saying the Plaintiff needed medicine the Plaintiff then told the Defendant that she did not agree and that was not true and felt that she in fact did not need medicine the Defendant the laughed and said see I told you, you are Bipolar.

57. The Plaintiff told the case worker her case worker at the time Sheena Humpfery about what happened at the Defendants Gladys Croom apartment Sheena  Humphrey the told the Plaintiff that Gladys Croom assured us she was not going to be doing the evaluations in the bed room anymore and would do them in her living room.

58. On December 18, 2014 a mediation was held at the family courthouse the Plaintiff and the next Defendant Devin Dittrich were seated at the conference table the Defendant then stated to the Plaintiff that she would agree to the evaluation that Gladys Croom conducted the Plaintiff then stated that no she does not agree to the test done by her and explained that under the conditions in which the test was done.

59. The Plaintiff then stated to the Defendant that she would have her own independent test done outside of DCFS and that she felt she had a right too, the Defendant then became very upset saying that you will agree to the evaluation and kept insisting that the plaintiff would agree and submit or else you will never get you son back now do you agree so things can move forward the plaintiff then again said no she would not agree.

60. After that June 2014 the Plaintiff parent coach services were withheld and Plaintiffs visits with her child was decreased for not agreeing to the evaluation and having her own independent evaluation done at Bobby E. Wright Defendant Felicia Shell stated to the Plaintiff that her evaluation was done and Bobby E. Wright would not be valid in family court and the test done by DCFS would so you were wasting your time getting that test done anyways.

61. Plaintiff was later informed that her mother reported to DCFS that the Plaintiff was Bipolar and Schizophrenia which is a lie.

62. On March 10, 2015 in family Court during the Plaintiff permanency hearing, the Defendant then lied to the judge and told him that the Plaintiff was not complying with her services and that the goal should be changed to substitute care pending termination of parental rights then as the Defendant and the Plaintiff left the court room the Defendant the stated I forgot to writ Ms. white a referral for parent coach service.

63. The plaintiff then asked the Defendant how could she not be complying with services that were withheld or not given to her Defendant did not respond back.

64. On July 25,2015 The next Defendant Stephanie Covarrubias knowingly filed the fraudulent petition created by Felicia Shell to have the plaintiff rights terminated both Defendants purposely withheld the Plaintiff parent coach services for over a year and two months exactly the Defendants even stated the Plaintiff was going to pay for her own parent coach out of her pocket.

65. The plaintiff called the Inspector General Office and spoke with a man name Bill Anderson and told him of the mistreatment done to her by the caseworkers at OHU Mr. Anderson informed the Plaintiff he would contact her back about the complaints and never did the Plaintiff also mailed

Mr. Anderson grievances she wrote on some of the case workers and mailed them to Bill Anderson but never heard anything back from him.

66. On February 15, 2015 the plaintiff had a visit with her child K.W. the Plaintiff began to clean her child's nose. The Defendant Felicia Shell then stated that's gross let him clean his own nose he old enough to do it himself the Plaintiff then told the Defendant that she always cleans her child's nose he doesn't like to do it so she helps him to it, the Defendant began to shake her leg she used her cell phone to call her supervisor Devin Dittrich into the visit room the Defendant Felicia shell then stated to her supervisor get him out of here referring to the Plaintiff child before I say something.

67. The Defendant Devin Dittrich then took the child out of the visit room then the defendant Felicia Shell then the Plaintiff asked the Defendant is there something wrong with me for cleaning my child nose now the Defendant then stated Ms. white you are acting Bipolar the Defendants supervisor Devin Dittrich was back in the room and heard the Defendant Felicia Shell say the Plaintiff was acting Bipolar then the Defendant Devin Dittrich asked Felicia Shell to Leave the visit room.

68. April 2015 The Plaintiff had a visit with her child K.W. the child told his mother his permanent tooth was broken out of his mouth while in foster care.

69. The Plaintiff became very upset with the caseworkers because they never informed her that her child was injured and it was very serious because the child's permanent tooth was broken and it required for him to have surgery and her child informed her that he was in a lot of pain.

70. When the plaintiff asked the Defendant Felicia Shell what happened to her sons mouth she refused to tell the Plaintiff anything and just stated for the Plaintiff to just visit your son.

71. The Plaintiff then called her mother the foster parent since the caseworkers gave her no information on how her child got injured the plaintiff asked the foster parent what happened to her child's mouth the foster parent then stated he fell off a skateboard he is a boy what do you expect.

72. The Plaintiff then asked the Defendant Felicia Shell about information on the child abuser registry and asked how could she access the information the Defendant then told her that was inappropriate to ask her and the stated that the Plaintiff needs to just visit her son the Plaintiff would always ask the Defendant when were here parent coach services were going start again the Defendant always would refuse to answer the Plaintiff had a right to ask about her services that were purposefully stopped by the Defendant.

73. February 2015, The plaintiff had a visit with her child K.W. the child brought along his d3s video game the Plaintiff and her child were looking at pictures in the game which had a built in camera were the child was able to take pictures the Plaintiff then came across a picture in the child's picture gallery she saw her child K.W. laying across a bed naked in sexual position with his penis erect.

74. The plaintiff then began to ask her child what was going on the child then became very upset, crying and began to hyperventilate.

75. The Plaintiff then held her child and told him its ok it's not your fault now tell mommy what happened the child refused to tell his mother what happened.

76. After the visit the Plaintiff stressed to the Defendant Devin Dittrich who had monitored the visit that she felt the grandfather had still been sexually molesting her son and to please let her know what's going to happen about them investigating the picture.

77. The Plaintiff stressed to the all of the Defendants listed above that her child had been sexually abused by her father but they didn't care to listen and that the grand father is at the foster home on a regular basis and has all the contact he wants with the Plaintiffs child K.W.

78. The next day the Plaintiff called the Defendant Devin Dittrich to get a update on her child and the picture incident.

79. The plaintiff was then informed by the Defendant Devin Dittrich that the child said nothing happened to him and that she told the 8-year-old boy that the picture of his penis was a selfie'' and if the child didn't want it in your game you have a right to delete it and she told him to delete the picture.

80. The Plaintiff became very upset with the Defendant and asked her how she could tell an 8-year-old to delete something so disturbing that could be used as evidence to prove that he is still being sexually abused in the foster home.

81. The plaintiff also stressed the fact that the agency One Hope United assigned a therapist to her child and the therapist never got a chance to investigate or even look at the picture or properly talk to her child about it.

82. On June 14, 2013 the Plaintiffs child K.W. graduated from kindergarten one of the last most memorial times, the Plaintiff can remember having with her child as a family he was so happy singing and dancing with his classmates on stage at his graduation with his mother cheering him on with tears of joy until just weeks later.

83. A mother went to work her child was with people she trusted to watch over him her child ends up at the hand of his sexual abuser. Then DCFS employee shows up at the Plaintiff door and without a warrant illegally examine her child and forces this mother to remove all of her child's clothes even his underwear.

84. The DCFS worker Judith Hardin indulged on a government experiment with the Plaintiff and her child and it went horribly wrong and changed the lives of this family forever.

85. A mother and child that truly loves each other and a mother that was trying to protect her child from further sexual abuse at the hands of her own father, a father that sexually abused her as child as well. The Defendant Judith Hardin illegally seized the child Plaintiffs child leaving severe lifelong psychological and emotional scares when she and all the other Defendants listed above interfered on the Plaintiff and her child's constituted living as a family.

86. The Plaintiff has been constantly discriminated against by the Defendants for being a same sex/lesbian parent, the Plaintiff was denied by the all Defendants listed above to be involved with her child's K.W. education school functions.

87. The Plaintiff was even denied to have copies of her child's report cards a mother should not be denied these things for her child in which the Defendants denied her since her child has been separated from her since 2013.

88. The Defendants have because a permanent Emotional pain from their malicious acts they inflicted upon the Plaintiff and her Child.

89. When the child K.W. calls his Mommy and says mommy we are having a parent teacher breakfast at school can you come?

90. Or mommy I'm going on a field trip with my class can you come with me?

91. That is the most heart wrenching feeling in the world for a mother to have to go through to tell her child no she can't attend or come, not because she doesn't want to but because all the Defendants listed above caseworkers told her she could not.

92. This has left an unbearable impact of pain so hurtful in the plaintiff's heart forever the Defendants not only infringed to the up most on the Plaintiff and her child's lives but have changed them forever j.B.v Washington County (10thCir.1977 The forced separation of parent from child, even for a short time (in this case 18 hours), represents a serious infringement upon the rights of both.

93. What the Defendants have done is so detrimental to the Plaintiff and her child and is so sickening and unconstitutional, the Plaintiff doesn't even really; believe the Defendants are human beings but something other than, because of the actions they displayed.

94. The Defendants were not finished with their destruction on this family with their evil doing they even inflicted more pain upon the Plaintiff, by Intentionally using a fraudulent scheme which is more deleterious and injurious to the Plaintiff the Defendants conspired with wicked, malice, lies trickery and has inflicted Intentional Infliction of Emotional Distress and discrimination and the Plaintiff feels it would take a life time to recover from Defendants Devin Dittrich and Stephanie Covarrubias recently engaged in conspiracy of spoliation of evidence and purposefully took evidence off the Plaintiffs file which is inform of a computer disc the evidence which was intentionally destroyed by these two Defendants would have proven that the Defendants knowingly lied and committed conspiracy to have the plaintiffs rights terminated and the hurtful and humiliating and fraudulent statements Defendant Felicia shell stated on the TRP petition about the plaintiff not showing interest concern and welfare was not true.

**FIRST CLAIM FOR RELIEF**
**FOR VIOLATION OF FEDERAL CIVIL RIGHTS (42:1983)**
**COUNT 1**

(Procedural Due Process, Familial Association, Privacy, Warrantless Seizure of a child/unlawful Detention; by Plaintiff Against Social Worker Defendant, Judith Hardin

95. Plaintiff allege, and incorporate herein, as if set forth in full of the preceding paragraphs.

96. Plaintiff Dawnetta White is an individual citizen of the United States, protected by (42U.S.C.1983)

97. Plaintiff is informed and believe and thereon allege that the right to familial association guaranteed under, without limitation, the first fourth and fourteenth is" clearly established" such that a reasonable social service agent in the Defendant situation would know it is unlawful to remove a child from the care, custody, and control of its parent or to question threaten, examine,

or search a child in the absence of exigent circumstances without first obtaining a warrant to do so.

98. Defendant at all times relevant herein, had affirmative Duty, and obligation to recognize and conduct herself in a manner that confirms, provides for, and does not violate the protections guaranteed, Plaintiff under the United States Constitution, including those under the Fourteenth Amendment, to include without limitation, the protection of parental rights, the right to privacy, family integrity and the right to familial relations.

99. Defendant was acting under color of State law when she acted, or knew and agreed and thereby conspired to violate the Plaintiff civil rights by, but no limited to, removing, detaining and continued to detain K.W. from the care, custody and control of his mother Dawnetta White, without proper or just cause and/or authority, thereby violating the Plaintiff rights under the Fourth and Fourteenth Amendments of the United States Constitution.

100. Defendant never obtained nor sought a protective custody warrant prior to seizing K.W., nor did this Defendant seek or obtain Plaintiff Dawnetta White consent to remove K.W. further this Defendant had specific articulable evidence to support any reasonable basis for believing that K.W. was in immediate danger of sustaining serious bodily injury or death within the time it would take to obtain a protective Custody Warrant.

101. Indeed, the Plaintiff is informed and believe and thereon allege that the Defendant purposefully failed to seek a custody warrant, knowing that insufficient grounds or evidence existed to support such application, and or as detailed in plaintiff second Amended compliant as a result of an unconstitutional policy, custom, or practice.

102. Or, never obtaining warrants prior to seizing children. reasonable and less intrusive alternative means existed to secure the Plaintiff Civil rights and security, without warrantless removal or K.W., yet the Defendant, intentionally failed to pursue or even investigate such less intrusive alternative means.

103. As to the Plaintiff the Defendant has violated her Civil Rights by failing to adhere to the requirements of the Fourth Amendment of the United States Constitution when she seized, detained, questioned ,threatened , examined and searched K.W. without consent of him or his mother, Plaintiff Dawnetta White without obtaining a prior court order or authorizing, warrant, again no exigent circumstances existed, which might excuse said failure to obtain parental consent or a court order prior to said seizure.

104. In that Dawnetta White did not present an imminent danger of inflicting serious bodily injury to her child K.W. within the time it would take to obtain a court order or warrant.

105. Said conduct therefore also constitutes a substantive violation of the plaintiff rights guaranteed by the First, Fourth and Fourteenth Amendments to the United States Constitution also, by unlawfully seizing and removing K.W. from the plaintiff Dawnetta care or conspiring to do the same, without first providing an adequate notice, or an opportunity to be heard, the Defendant, violated the Plaintiff Procedural process rights.

106. Defendant committed these Unconstitutional/ acts without proper justification or Authority, and without probable cause, exigency, or court order, see Mabev vs Wounty of san Bernardino (2001 237 f.3d 1101.).

107. The Defendant maliciously violated and or conspired to violate the civil rights of the Plaintiff found in the fourteenth Amendment of the United States Constitution by, but not limited to, removing, detaining and continuing to detain the Minor K.W. from the care, custody, and control of his mother without proper or just cause and/ or Authority and by use of coercion, duress, or fraud to obtain evidence.

108. Said acts were taken deliberately, with callous or reckless indifference to the substantial rights of the Plaintiff or fueled by an evil motive or intent.

109. As a direct and proximate result of this Defendant misconduct, the Plaintiff has suffered and will continue to suffer general damages according to proof at trial, including but not limited to physical/and or mental anxiety and anguish among other things.

110. The Defendant social worker as herein. Alleged was intentional, done with malice, oppression, or fraud with a callous or reckless indifference to the rights of the Plaintiff, or motivated by an evil intent, such that the Plaintiff is entitled to recover punitive Damages in accordance with law, And subject to proof at trial.


## SECOND CLAIM FOR RELIEF
## FOR VIOLATION OF FOURTH AND FOURTEETH AMENDMENTS (FAILURE TO PROTECT)

## COUNT2

## Against social workers Defendants (individually) Felicia Shell, Stephanie Covarrubias, Devin Dittrich Judith Hardin, by; Plaintiff and her child K.W.

Plaintiff allege and incorporate herein, as it set forth in full paragraphs, inclusive

111. Plaintiff is informed and believes and thereon alleges once the state assumes wardship of a child the state owes the child, as part of that persons protected liberty interest, reasonable safety and minimally adequate care. At all times applicable herein, said liberty interest and Duty of the state was" clearly established" such that any reasonable social worker would know that a small, child such as K.W. should not be placed in situations, where it was reasonably foreseeable that the child would be furtherly sexually molested or physically battered by an identified dangerous individual , Plaintiff is further informed and believes and thereon alleges that the social workers Defendant listed above individually knew or should have known the child K.W..

112. Was being placed in a situation where he could be sexually molested or physically harmed by a dangerous individual. Defendants were acting under color of the state law when they breached their duties to K.W., by confining him in the foster home of his grandmother where the grandfather had molested him as a baby and has all the access he wants to the foster home where the child is living.

113. Said public employees did so without the proper justification or excuse, further the actions or said public employees were taken with deliberate indifference to the Plaintiff rights, by these actions, The Department of Children and Family Services and One Hope United caseworkers and

supervisor/agents interfered and or/attempted to interfered with K.W. Constitutionally Protected Liberty interest and did so without excuse or justification.

114. As the direct and Proximate result of the aforementioned actions of the Department of Children and Family Services, and One Hope United Case Workers and employees, the Plaintiff and her child has suffered and will continue to suffer, physical, mental, and Emotional; injury, all to an extent and in an amount subject to proof at trial.

115. On information and belief, the aforementioned social workers/employees Defendants and each of them acted with malice and with the intent to cause injury to the Plaintiff and her child in a despicable, vile and contemptible manner, therefore Plaintiff is entitled to an award of punitive damages for the purpose of punishing said employee's social workers, Defendants and to deter them and others from such conduct in the near future.

## COUNT 3

### (Familial Association/ right to be free from the dishonesty of public Employees in Juvenile Court Proceedings, i. e. Perjury, Fabrication of Evidence, Suppression of Exculpatory Evidence; By Plaintiff Against Social Workers Defendants;( Individually) Felicia Shell, Stephanie Covarrubias, Devin Dittrich, Karen Powell, Gladys Croom, Judith Hardin)

116. Plaintiff allege, and Incorporate herein, as it set forth in full 1 through 113 inclusive, plaintiff is informed and believe and thereon allege that at all time relevant herein, their existed a clearly established Due Process right not to be subjected to false accusations on the basis of false evidence that was deliberately fabricated by the government, such that reasonable social service agent.

117. In Defendants situation would know it is unlawful to lie, fabricate evidence, and or suppress material exculpatory  evidence in court reports or any documents filed with the juvenile court to influence judicial decision making, In fact Defendants, and each of them, had affirmative, and self-evident duty to be truthful, accurate, and complete in petitions, reports and Documents submitted to sovereign court with power to adjudicate, substantial rights including Parental rights, and to refrain from using improper and deceptive means to obtain judicial sustention, of recommendations seeking to disparage the plaintiff Liberty Interest.

118. In doing the things alleged herein above, Defendants and each of them, where acting under color or state law, when they acted, or knew an agreed and thereby conspired, to knowingly present false allegations false or coerced testimony, fabrication evidence, and or suppress exculpatory evidence before the juvenile court, thereby violating the Plaintiffs rights found in the First and Fourteenth Amendment to the United States Constitution.

119. Breaching their Duty to the Plaintiff, as a direct and proximate result of these Defendants, violations, and in accordance with 42U.SC.1983, Plaintiff civil rights have been violated in that she

has suffered, and will continue to suffer General damages and special damages in an amount not yet ascertained but which shall be shown according to proof at trial.

120. The wrongful and despicable conduct of the social worker Defendants and each of them, as herein, alleged was intentional, done with malice, oppression or fraud a callous or reckless indifference to the rights of the Plaintiff or motivated by an intent evil, such that Plaintiff is entitled to recover punitive damages in accordance with law and subject to proof at trial.


### THIRD CLAIM FOR RELIEF
### VIOALTION OF FOURTH AMENDEMNT RIGHTS TO PRIVACY LAW NEGLIGENCE/ MALPRACTICE
### (42:1983) Defendant Gladys Croom by; Plaintiff

121. Plaintiff allege and Incorporate herein, as if set Forth full of the proceeding paragraph71 through 76 thereon allege that right to protection of invasion of privacy and defamation (slander and libel) rights were violated under the Constitution law 42:1983by the Defendant also the Defendant stated above violated licensing standards and a legal Duty, to the Plaintiff to protect her privacy rights the Defendant was Derelict in that duty, either through omission the Failure to Perform her duty by using trickery and purposefully misdiagnosed the Plaintiff with bipolar and schizophrenia that false information that was given by the hotline caller said anonymous caller the Plaintiffs mother which was total heresy and the Defendant also misdiagnosed the Plaintiff with several other false mental illnesses which is totally also not true for an agency to send this Plaintiff to a private home of this so called Doctor psychologist and for this Doctor to be giving parents mental evaluations and she tells this Plaintiff she had several mental illness herself is totally unprofessional and a liability of this agency to put parents in harm's way to receive misleading and fraudulent misdiagnoses when they in fact have no mental illness at all these actions from this Defendant is over the top unconstitutional damaging and even more disturbing and unlawful as malpractice also through commission an action done by the Defendant include without limitation the protection of the Plaintiff rights to privacy and free the Plaintiff such sensitive personal humiliating and /or embarrassing purposeful misdiagnosed the Plaintiff information and intimidation to be shared with outside citizens listening right in the next bedroom the Plaintiff has suffered mental harm and emotional harm.

122. This Defendant not only violated the Plaintiff rights to privacy including the HIPPA federal law act but continued to do so when taunting the Plaintiff after giving her the evaluation in person at OHU stating to her with laughter that she was in fact bipolar and needed medication this Defendant is a licensed psychologist and not a medical doctor which is a medical doctor called a psychiatrist who recommends and prescribe medications to clients when they are evaluated through them and medically diagnosed.

123. This Defendant was derelict at her at her duty by violating the HIPPA privacy act being very unprofessional and inappropriate as described were illegal un Constitutional adding further injury to the Plaintiff to frame by using false diagnoses to mislead the juvenile court that she is mentally unstable in which was conspired by the supervisor Defendant Devin Dittrich in the beginning to

use against the Plaintiff to terminate her parental rights that's why the Defendant Devin Dittrich insisted that the Plaintiff agree to the evaluation done by this Defendant.

124. Defendant violated the Plaintiff protection of the United States Constitution Fourth Amendment right to privacy wherefore, Plaintiff has suffered and will continue to suffer Defendant was acting under color of law and intentionally inflicted wrongful and despicable conduct with malice and oppression with a callous or reckless to the rights of the Plaintiff or motivated by an evil in which due to Defendants diagnoses see evidence was done with evil intent, such Plaintiff is entitled to recover punitive damages in accordance with law and subject to proof at trial.

**FOURTH CLAIM FOR RELIEF**
**Liability for Child Tort against the Defendants: Felicia Shell, Stephanie Covarrubias, Judith Hardin,**
**Devin Dittrich by: Plaintiff(Individually)**

125. Plaintiff allege, and Incorporate herein, as if set forth in full paragraph 18 through 113 a Special relationship exists between the Department of Children and Family Services and the Child placed in foster care such that its Social workers and supervisors bear a responsibility to care for and control children placed in their care, as such (DCFS) (OHU) and its employees, social workers, agents, and supervisors owe a duty to exercise reasonable care to prevent harm to the children.

126. When they had knowledge and knowingly knew dangerous habits or exposure of further sexual abuse would be easily allowed due to simple access in the foster home where the minor was placed the Child K.W. prior to being detained by the DCFS social worker Defendant Judith Hardin the child had a History of being sexually molested by his grandfather the Plaintiffs father, Defendant was informed prior to the minors placement into the foster care home which made it foreseeable that the child would likely be furtherly molested and harm by being exposed to more sexual abuse.

127. DCFS, OHU, its agents, employees, listed above all breached their respective duties to protect K.W.by but not limited to placing K.W.in a dangerous environment where his former sexual abuser frequents the child even told his mother and his therapist how he witnessed a gruesome murder while with his grandmother in foster parent the child K.W. said mommy I saw a man get shot in the head and blood was everywhere the child was seven at the time the Plaintiff child has suffered severely while in the warship of DCFS and for this young child to be able to in full detail describe this murder he saw in full detail proves this proves this child remembered everything that he saw the Plaintiff feels that this has really caused a serious extremely injurious and permanent damage to her child the caseworkers once again never informed the mother her child witnessed a murder the parent once again learned this from her child during a visit and became very upset because every time something awful has happened to her child they never informed her about it and this where serious happenings and they turned their heads and never told the natural mother about any of these events her child faced while in the wardship of them the Plaintiff holds these Defendants responsible no investigations were properly done with the

sexual abuse the child tooth being knocked out of his mouth nor him seeing a man having his head blown off this child has been damaged in an over extreme matter and the Defendants are liable and responsible to the fullest.

128. A reasonable person standing in the shoes of the Department of Children and Family Services / and or its agents would not have placed K.W. a small child at the time of illegal detainment in foster home where the molester that hurt him as baby has regular contact with the child, as a direct proximate result of the Department of Children and Family Services, employee's contractors including OHU individual Defendants listed above negligent conduct K.W. was sexually and physically abused/harmed on at least two occasions due to evidence.

129. With resultant extreme emotional and physical pains, distress, including but not limited to fright, nervousness, sleepiness, anxiety, worry, mortification, shock humiliation, and indignity, to an extent and in an amount subject to proof at trial.

130. Department of Children and Family Services and One Hope United is vicariously responsible for the conduct of its social workers, contractors, agents and employee's duties were to protect the child constitutional rights to refrain from acting deliberate indifference to the Constitution and duty Defendants owed to protections of a Childs complete welfare and safety that is placed in ward ship under their control.

## FIFTH CLIAM FOR RELIEF
## MONELL RELATED CLAIMS FOURTEENTH AMENDMENT VIOLATION
## Against the Defendant: Judith Hardin (Individually) Devin Dittrich, Felica Shell,Stephaine Covarrubias

131. Plaintiff allege, and to the extent applicable, incorporate herein, as set forth in full, each of the of the foregoing paragraphs.

132. DCFS AND ONE HOPE UNITED both are a public entity and each of its employees is a person with meaning of 42:1983 and subject to Monell Liability Monell v Dept. of social services 1978.436U.S.658Defendant acted under color of state law when committing the acts alleged herein, in violation of the Plaintiff and her child's constitutional rights.

133. Defendant employees , social workers through its public entity DCFS AND OHU and the Defendants sued in their own official capacity who had supervisory and or policy making, authority, had a duty to Plaintiff Dawnetta White and her child K.W.at all times to establish, implement and follow policies, procedures and customs and or practices herein, after referred to as "policy or polices which confirm and provide the protections guaranteed Plaintiff under the Constitution DCFS social worker Judith Hardin violated the Plaintiff Fourteenth Amendment rights when she was told she was not allowed to be present in the hospital room while her child was being examined by the doctor and the Defendant the child K.W. was illegally seized and searched/examined without a warrant nor court order and the Defendant knew the child was in no immediate harm danger nor death `even when Defendant came to the Plaintiff residence without a warrant demanding to illegally examine and question the Plaintiff and demanded the

child K.W. clothes be removed even his underwear the Plaintiff child was examined by the Defendant just the day before, the Defendant already had knowledge K.W. was in no immediate danger and had no reason to detain the child the following day while illegally at the Plaintiffs home and was there the day before on private property without a warrant nor court order.

(a) The Department of Children and Family Services its entity did not provide training to its Defendant, social worker Judith Hardin, regarding the circumstances under which judicial authorization must be obtained prior to removing a child from the custody of its parent(s) when there was no evidence that the child was immediate risk of suffering serious bodily injury.

(b) The Department of children and family service its entity did not provide training to Defendant social worker Judith Hardin regarding the fact that judicial Authorization or parental consent in required prior to interviewing examining and or interrogating a child outside the presence of its parent(s) when there is no specific articulable evidence that the child is in immediate risk of suffering serious bodily injury or death.

(c) The Department of Children and Family Services did not provide training to its social worker Judith Hardin on the well-established constitutional protections afforded to a parent and child by the First and Fourteenth Amendments also the Defendant was not trained by the Department of Children and family services about allegation 60 that those allegations of 60 environment injurious which was removed from ANCRA in which due to the facts of this 42:1983 she knew the child K.W. was in no way neglected nor was he in a dangerous environment at home with his mother on the date in question nor was he in any harm at his school where his mother the Plaintiff dropped him off on July 8[th]2013.

(d) The Department of children family services did not provide training to its social worker Judith Hardin must disclose all know exculpatory evidence to the juvenile court.

(e) The Department of children and family services didn't provide training to its social worker Judith is Hardin preclude from including false statements in documents or reports to the juvenile court.

(f) The policy of detaining /and or removing children from their family and/ or homes without exigent circumstances (imminent danger of serious physical injury) warrant/ court, order, and consent of the parent and that Allegation 60 (Injurious Environment) is void by law and was non founded in this case but was falsely reported upon documentation in the report by this Defendant.

(g) The policy of examining children without exigency need or proper court order, and without the presence of their proper custodian and or guardian failing to train agents, social workers in.

(h) providing the constitutional protections guaranteed to individuals including those under the first and Fourteenth Amendment. On information and belief, the aforementioned social worker Defendant acted with malice and the intent to cause injury to the plaintiff and her child and infringed on the Plaintiff fundamental liberty interest in a despicable vile and contemptible manner, therefore Plaintiff is entitled to an award of punitive damages for the purpose of punishing said employee social worker to deter them and other from such conduct in the near future.

(i) One Hope United its entity did not provide training its Defendants Social workers listed above regarding, Constitutional Rights of parents about bias and discrimination of a parent's/parent sexual orientation.

(j) One Hope United its entity did not provide training to its Defendants Social workers listed above that a well-established Constitutional protections afforded to a parent and child by the first and fourteenth amendments.

(k) One Hope United its entity did not provide training to its Defendants Social workers listed above about preserving and disclosing all known exculpatory evidence to juvenile court during a child custody court proceeding that would exonerate a parent from losing their parental rights.

(l) One Hope United its entity did not provide training to its Defendants Social workers listed above about using acts of trickery, and retaliatory schemes and fraud against parents in decisions to create petitions for termination of parental rights of parents unlawfully.

(m) One Hope Untied its entity did not provide training to its Defendants Social workers listed above to properly and thoroughly investigate allegations and or possible findings of sexual abuse and actual evidence child pornographic materials and injuries of a child while in foster care and also to preserve that evidence and not asking the child the victim to destroy it and properly notifying the child therapist about possible sexual abuse while in foster care.

(n) One Hope United its entity did not provide training to its Defendants Social workers listed above about intentionally using perjury against parents in child custody in a juvenile court proceeding.

(o) One Hope United its entity did not provide training to its Defendants Social workers listed above about their Constitutional rights to not agree with testing and evaluations done by DCFS doctors and have rights to second opinion by outside neutral doctors or even their own private doctors.

(p) One Hope United its entity did not provide training to its Defendants Social workers listed above about the Constitutional rights of parents not to intentionally punish parents and decrease their visits with their children in retaliation of not agreeing with mental evaluations before a goal change to terminations of parental rights was ruled in a juvenile court proceeding by a judge.

### SIXTH CLAIM FOR RELIEF
### FRAUDULENT INTENTIONAL MISREPRESENTATION, by; Plaintiff against Defendants: Felicia shell,Devin Dittrich, Stephanie Covarrubias,  (Individually)

134. Plaintiff allege, and incorporate herein, as set forth in full proceeding parargaphs79 through 91

135.  At all times under color of law at all times applicable herein, Defendants listed above had a duty to provide and accommodate the Plaintiff with proper Due process providing parent coach services and not unlawfully out of wickedness, use trickery or fraud to purposefully  disadvantage Plaintiff and with hold such an outstanding service that was mandated by the state an office policy to complete for fair reunification with her child  the Defendants infringed with their hideous conducts upon the Plaintiff  her fundamental liberty interest was seriously violated Defendants willfully and recklessly disadvantaged the plaintiff not to progress in order to write in

court reports of false allegations about the plaintiff in bad faith Defendants conduct was outrageous malicious and unconstitutional Plaintiff is entitled to be awarded punitive damages.

136. For the purpose of punishing the Plaintiff these defendants listed above inclusive, and to deter their duties from such conduct in the future, Defendants violated the plaintiff due process rights by denying her a mandated service which would enable the Plaintiff to have reunification with her child K.W. Defendants both of them used perjury and fraud in family court and even taunted the Plaintiff telling her should was going to pay for her own parent coach out of her expense to be free from more lies the Plaintiff got her own independent mental evaluation done outside of DCFS and the Defendants were very upset and suspended the Plaintiff services and visits with her child intentionally in Retaliation for not agreeing with the DCFS evaluation the Plaintiff believes Defendants had a duty not to purposefully deprive the Plaintiff of her rights to complete mandated services as required by the state and to complete the service plan as the Plaintiff was doing to get her child back, Defendants had a duty not to use trickery lies manipulation and deceit in the Plaintiffs rights to services visits with her child and her fundamental liberty interest the Defendants purposefully disadvantaged the Plaintiff not to progress in her services to reunite with her child , K.W. Defendants have Discriminated against the Plaintiff for being gay and dressing like a man and has stated the child is not comfortable with that children see not prejudice unless invoked by an adult.

137. Plaintiff has suffered due to the outrageous acts of conspiracy of fraud committed on her from the Defendants to take her parental rights away because of discrimination of her sexuality using fraud and knowingly submitted false statements to the juvenile court.

138. Defendants had a duty to not to withhold and deprive rather than provide the plaintiff with services not infringe on her fundamental liberty interest and use perjury, intentional misrepresentation tricks, lies nor schemes to disadvantage the Plaintiff from receiving a fair justly Due process.

139. Defendant Felicia shell violated the Plaintiff equal rights by not fairly providing the Plaintiff with services mandated by the state Defendant knowingly staffed and changed the goal post for (TRP) knowing that she had not fairly provided the Plaintiff with the outstanding service of parent coach in which the Plaintiff relied upon these Defendants representations to reunify with her child and retain her parental rights by law also the other claim on the TRP petition the Defendants additional false claims these Defendants made that the Plaintiff failed to correct the conditions to why her case came into DCFS is a lie the Plaintiff agreed to the juvenile court judge not to use corporal punishment on her child and has had supervised visits for three years with the agency OHU and has been involved with her child and has been nothing but concern about her Childs well-being and safety and never posed as a harm nor threat to her child in no way for the three years all claims against the Plaintiff created by the Defendants in the TRP petition was and is fraudulent and was intentional the Plaintiff never spanked her child and posed as a threat of harm since her child has been illegally detained in the custody of DCFS.

140. Defendant Devin Dittrich is both the supervisor over these two social workers and had final authority over decision making to change the goal and to petition the Plaintiff to have her parental rights terminated in which was the head of staffing and creating the petition and also knew the information allegations was in fact false and knowingly was false by these Defendants.

141. Defendant Stephanie Covarrubias violated the Plaintiff Constitutional rights when she engaged knowingly in the presentation of false evidence or testimony to the juvenile court such as the TRP petition in which she testified otherwise about the fitness of the Plaintiffs welfare and concern she has for her child K.W. see June twenty-fifth transcript the TRP petition was filed just three days after by this Defendant which shows she knew allegations in that petition were untrue but intentionally with malice filed it anyway under retaliatory circumstances as instructed by her supervisor Defendant Devin Dittrich who knowingly knew was not true this was another form of retaliation done by this Defendant Devin Dittrich for the Plaintiff not agreeing with the flawed evaluation done by Defendant Gladys Croom if the Defendant properly conducted her own investigation or properly remained neutral but instead being callous and impersonal and had care nor concern and disregarded what the facts indeed were in this case and reviewed the Plaintiff case file she would have knew but did know the information to be false even if she attempted to do a minimal investigation in which she had no care or concern and had a duty to do so but instead disregarded the facts knowingly and purposefully with an wanton, reckless, and malicious evil intent to cause extreme damage to the Plaintiff engaging in fraud and perjury (720ILcs5/32.2) a person commits perjury when under oath or affirmation in a proceeding or in any other matter where by law such oath of affirmation is required he/she.

142. Makes a false statement, material to issue or point in question which does not believe to be true

143. Proof of falsity of a contradictory statement shall bar prosecution there under any provisions of this code see Exhibit #1 including those under the First and Fourteenth amendments, to include without limitation the protection of the Plaintiffs right to be free of governmental deception trickery or fabrication of evidence a fundamental concept of our American system of "justice ".

144. Is that those charged with upholding the law are prohibited for deliberately injuring the Plaintiff by fabricating evidence and framing the Plaintiff Linone vs Condon, 372f.39,44-45(1st cir mass 2004) indeed long ago the United States Supreme court unequivocally held that the governments knowing use of false or perjured testimony/ deliberate suppression of exculpatory evidence constitutes a violation of Due process. Also the legislature has since re-inserted the term "environment-injurious' 'into the statue in2012, but with much clearer, new limitation. A parent must "blatantly disregard"" their duty of care and cause a likelihood of harm to the child.

145. The Defendant also falsely stated in the TRP petition that the Plaintiff neglected her child which is clearly false in a unanimous decision issued on March21,2013, the Illinois Supreme Court affirmed the decision of the Second District AppellateCourtin julieQ.v. DCFS2013 IL113783, and reinforced the holding of that court that the "environment injurious" allegation, also known as "Allegation60 is void as a matter of law. In 2001, DCFS the holding of the supreme court determined that any indicated finding issued under this 2001 rule is unauthorized, as void as matter of law and should be expunged.

146. The Plaintiff has suffered tremendously with lost bonding time with her child K.W. including the care custody and nurture of other child which was denied by all of the Defendants in this 42:1983 lawsuit in the first place and seeing him once a month for one hour, serious extreme injury so overwhelming painfully emotional and physical pains and distress, including to fright nervousness, anxiety, worry mortification, shock humiliation depression and indignity to an extent and in an amount subject to proof at trial.

**SEVENTH CLAIM FOR RELIEF**
**GROSS NEGLIAGENCE by: Plaintiff**
**Against all of the Defendants listed above (individually)**

147. Plaintiff allege and incorporate herein, as if set forth in all full paragraphs that all actions and each Individual Defendant listed above under that action acted with extreme or wickless disregard to the Plaintiff and the safety and protection of her minor child all Defendants each of them individually had a lawful duty to respect, protect service, properly accommodate, treat fairly the Plaintiff and her child and follow the law a parents right  the custody of his or her children is an element of liberty guaranteed by the 14th and 5th Amendment of the United States Constitution 369 NW2d889,MI AppDiv(1983)

148. Defendants had a duty each of them to not violate the Plaintiff nor her child's constitutional rights and deprive them of their fundamental liberty interest and not to purposefully commit unlawful and Constitutional acts such as fraud, perjury , deprivation , discrimination,  Intentional Distress , see claims Plaintiff and her child have suffered extremely for three years going on four years  from the Defendants unconstitutional and deliberate violation on fundamental liberty interest , infringement, and discrimination, perjury and fraud are happening even to date also the case workers listed above infringement on the Plaintiff and her child's Constitutional rights by telling the Plaintiff during her visits with her son K.W. that she was not allowed to tell her son that he would be returning home to her soon Defendants told her the Plaintiff she was not allowed to tell her child anything about returning home back with her Defendants also threated to end certain visits if the Plaintiff continued to tell mention to her child K.W. about great things that would take place once the child returned home  in her custody again or if the defendant "got personal with her child" to ask him if he has been around his grandpa or asking him if he is being treating fairly in the foster home the Defendants would tell the Plaintiff she was being inappropriate  with her child and the visit would be dismissed.

149. Department of Children and family services are supposed to protect children not put them harmful dangerous environments the Plaintiffs child K.W. has been exposed to further sexual abuse while in foster care and has been psychically injured and DCFS cared less to investigate and inform her when her child hurt himself and or was sexually abused and harmed.

150. Defendants owe to Due to the plaintiff and her child for being extremely grossly negligent and not properly investigating the ongoing sexual abuse of the child instead telling a seven year old to delete a picture that would have proved it was on going  in the foster home  the Plaintiff stressed to the Defendants time again that was happening by her father the child's grandfather and she did not want her child placed with her mother the  Defendants  disregarded those request from the Plaintiff before the happenings with her child ever occurred while in foster care with his grandmother in the first place these  Defendants  unlawfully seized and took wardship of plaintiff's child and failed him failed to protect him from sexual abuse and physical injury in which

they had a duty to do so and caused such extreme damage the child K.W. probably will never recover from in this life time.

151. Plaintiff and her child are entitled to Punitive Damages to Punish all of the Defendants, and deter them from committing acts like this in the near future, they failed a child and turn their heads as the Plaintiffs child suffered sexual abuse and got rid well told the child to destroy evidence of the child pornography the child had of his naked body and erect penis laying naked in a bed in his game device how was the child even let alone in the foster home to even be naked with an erect penis it proves the child was not being properly supervised by the foster parent.

152. Defendant Karen Powell being an agency coordinator at OHU was grossly negligent in her actions when she knew and was aware of the misconducts of discrimination and sexual harassment reported to her Defendant Keith Wheeler inflicted upon the Plaintiff before a status hearing in family court would take place Defendant Karen Powell had a duty and authority to protect the Plaintiff and her child from further misconducts from the former Keith Wheeler Had the Defendant Karen Powell separated or replaced the caseworker with another one Keith wheeler would have not been able to try to use retaliation against the Plaintiff for reporting his misconducts and him being fired in the first place the former caseworker would have not been able to misrepresent the Plaintiff in family court and commit perjury and lie on an innocent child who was only six years old to the family court judge in bad faith and vilifying the Plaintiff using wicked ,malicious, callous willful conducts lying on a child and putting the Plaintiff in a false light Defendant Karen Powell was also grossly negligent in how she had such authority to prevent further harms done to the Plaintiff who was emotionally and mentally distraught from the actions of the former Social worker Keith Wheeler, Karen Powell acted callous, impersonal and insensitive and did not handle the misconducts in a fair proper manner especially when the child was present and witnessed sexual misconduct from the prior defendant towards his mother.

## EIGHTH CLAIM FOR RELIEF
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS by: Plaintiff
### Against all of the Defendants listed above (Individually)

153. Plaintiff allege, and incorporate herein, as if set forth in all full paragraphs that all actions listed above and each individual Defendant listed under that action acted with an extreme reckless disregard of the possibility that the Plaintiff and her child would suffer emotional distress as result of their individual conducts listed above.

154. Defendants were acting with the scope of their induvial employment with DCFS and OHU permission and consent as to direct and proximate result of DCFS Social workers/employees Judith Hardin ,OHU Karen Powell, Felicia Shell, Devin Dittrich, Stephanie Covarrubias, Gladys Croom knowingly misdiagnosed the Plaintiff in one day in a matter of 5 hours in an apartment bedroom were random people in her apartment was smoking drugs and hearing and also laughing at the Plaintiff personal information on sexual abuse she endured as a child being

discussed in what was supposed to had been privacy which violates the HIPPA law act of this Plaintiff rights to privacy with the Defendant Gladys Croom engaged in with trickery and scheme using knowingly untrue laundry list of very serious mental diagnosis manipulated and intentionally made up mental diagnoses she knew was not true to deter this parent to make it seem as she was mental and unstable to eventually add on the child dependency case via a TRP trial to have the Plaintiff parental rights terminated and went as far to also advising that the Plaintiff take medication in which a psychologist in which the Defendant is has no authority by law to tell a client that type of information a Physiatrist only has that authority to do so but this Defendant taunted and laughed while telling the Plaintiff she was indeed bipolar in a way that was clearly unprofessional and a violation of her licensee standards by the State of Illinois all the Defendants in this lawsuit listed as induvial state actors in their own capacity have cause caused inclusive and extreme and outrageous conduct Plaintiff has suffered extreme emotional and physical distress, emotional and psychological stress including but not listed to fright, n nervousness, sleeplessness, anxiety, worry, adjustment disorder mortification ,and indignity to extent.

155. The Defendants social workers, supervisor, coordinators, and the psychologist DCFS doctoral listed above each of them in suit engaged in the above mentioned extreme, outrageous, unlawful and unprivileged conduct, including but not listed to removing and detaining K.W. from the love and care of his mother DAWNETTA WHITE, without court order/ warrant or exigent circumstances, continuing to Detain K.W. for un unreasonable period after (almost three years) after any alleged basis for detention and for placing K.W. in a situation where he was injured and or harmed a parent's rights to the custody of his/her children is an element of "liberty" guaranteed by the fifth amendment and the fourteenth amendment of the United States Constitution. 369NW2d889, MI AppDiv(1983).

156. Defendants should have known it was reasonably foreseeable that K.W. would furtherly be sexually abused and preventing DAWNETTA WHITE, his mother from asking K.W. about the circumstances of him having his penis photo'd and sexually exploited on a video games picture system which was taken by someone other than the child in the foster home of his grandmother in which his grandfather has access and frequents and Defendants were made fully aware of this by the Plaintiff and him laying on a bed completely naked and suppressing the true nature of the molest and how disturbing for a Supervisor Defendant Devin Dittrich to tell this child to discard such disturbing and harmful evidence that would have supported or suggested the mothers Plaintiffs allegations of sexual abuse in the first place and not taking the professional step to properly investigate such happening with this child but instead sweeping it under the rug and turning her head and not have a disregard to this child's well-being in foster care, presenting perjured testimony and fabricating evidence to support DCFS and OHU caseworkers and the supervisor using a FastTrack adoption scheme under fraud and discrimination to terminate a gay mothers parental rights with false and malicious allegations undue influence, coercion, and duress, deprivation bonding time stripped way fundamental liberty interest rights to care for and be involved with her child education was denied all the time the child has been in foster care, visits decreased to one hour once a month due to retaliation of not submitting to a purposefully overly and deeply intentional manipulated mental health evaluation and parent coach services

were stopped also the child K.W. has also been having problems in school while the Defendants knowing lied to the judge and told him the child was doing real good and also lied about the foster parents background as never having any abuse cases herself when in fact in the mid-eighties she had two impact cases of abuse and neglect by DCFS herself on two separate incidents two years straight which is the Plaintiffs mother and the foster home in which the Plaintiff child K.W. is placed.

157. All done because of the Defendants unlawful practices outrageous callous malicious acts of deliberate intentional , wanton and reckless and intentional insensitive and impersonal, disregards to a mother and her child right to fundamental liberty and not to be infringed upon in no way by third parties or government the Defendants and the Department of children and family services also used retaliation against the Defendant for filing this 42:1983 and after three years of abuse and various violations done by these nonhuman Defendants the family was removed from the agency OHU and has been placed with an outside agency within DCFS and told by a new caseworker supervisor this is where they send parents who file lawsuits the agency is called child link also the Plaintiff never missed a visit with her child and tried to complete the voluntary case plan to get her child back which should have never been removed from her care in the first place the Plaintiff always celebrated her child's K.W. birthdays gave him Christmas presents, school supplies winter coats and whatever her child need all while he has been in wardship of the state and brings him gifts to the visits even to this day and also has requested report cards and never gets them but was with fraud and malice vilified as an unfit and unconcerned parent by these unhuman heartless Defendants.

158. For the Plaintiff to be violated in a sexual manner by a social worker who knew the Plaintiff had a history of sexual abuse as a child and knew the Plaintiff is in fact a gay woman and was sexually violated in front of her child by this despicable case worker manager/ coordinator Defendant Karen Powell and OHU coordinator had authority over that social worker and had knowledge and knew of the former case workers abuse and mistreatments toward the Plaintiff and owed a duty to the Plaintiff and her child K.W. to protect them from such despicable acts that where further done after the fact who owed had a duty to protect and was also alone with the child himself is totally hideous, Defendant Felicia shell went as far to state on the termination petition that the Plaintiff showed no interest , concern or welfare for her child, the lie caused Extreme Emotional Distress for the Plaintiff, the Defendants listed above individually knew that was not true and used over the top pure malice to falsely and knowingly state those lies in the TRP petition of that nature to have the Plaintiff rights terminated when this Defendant did everything she could to deprive this Plaintiff her relationship and fundamental liberty interest rights to a parent a have a relationship with her child.

159. The Plaintiff is a gay mother and she has a right to be, the Defendants all treated her unfairly and held her services because of their sexual bias of her orientation and intentionally disadvantaged the plaintiff because of their views of her sexual orientation, Plaintiff should not have been deprived by the Defendants the relationship nor bond with her child that she had since giving birth to him and before the dependency case even started and further to deny this Plaintiff the constitutional right as a parent to not be able to be involved with her child education for three years to miss the important times of her child K.W. education field trips parent teacher

day picture report card picks up the Plaintiff only received a copy of two report cards one by picture text during this dreadful three year ordeal field trips parent teacher breakfast assembly performances that the child always asked his mommy if she could attend and also other milestones that a mother only dreams about experiencing with her children/ child however in this case the Plaintiffs only child which she nor her child K.W. could never get those losses back that were deprived of them both the Plaintiff not allowed to be involved in with her child education each year while in DCFS custody and deprived of that right that by the United States Constitution is a god given right and was not supposed to be infringed upon in no way but was by these Defendants which has caused extreme and severe lifelong damage to the Plaintiff for the three years almost four being that two weeks prior from the unlawful seizure this child was kidnapped by the Defendants had just graduated from kindergarten and the intentional actions of these Defendants has caused such an extreme detrimental pain of suffering and irreversible mental damage that the child and Plaintiff could never get that time back lost forever and was a very serious and personal and most special milestones in the Plaintiff and her child K.W. life would take a life time to recover from if never.

160. The right not to be conspired against by Defendants who used trickery, fraud deceit, perjury, framing suppression, defamation, discrimination and intimidation to have Plaintiff parental rights terminated intentionally with willing wanton, malice and evil indifference parents interest in custody of their child/ children is a liberty interest which has received considerable Constitutional protection; a parent who is deprived of custody of his or her child, even though temporarily, suffers thereby grievous loss and such loss deserves extensive due process protection in the interest of cooper,621 P2d 437;5 Kansas App div2d 584,(1980)

161. As a direct and proximate result Defendants violations in accordance 42U.S.C. 1983 Plaintiff and her child K.W. civil rights have been violated in that Plaintiff and her child has suffered extremely and will continue to suffer Plaintiff and her child are entitled to general and special damages for the wrongful and horrendous, despicable conduct of the social workers, supervisor, coordinator ,phycologist, and all and each of them was intentional, willful wanton, malice, oppression, fraud, coercion and pure callous and reckless indifference to the rights of the Plaintiff and her child motivated by an evil intent Defendants listed above individually Defendants case workers and their supervisor the Defendant Devin Dittrich also told the Plaintiff during visits when the Plaintiffs child asked about coming home not to ever tell him he would be coming home Defendants told the Plaintiff she was confusing her child to tell him he would one day come back home with her and they would be a family again the Defendants also made arrangements and made the foster parent which is the Plaintiff mother Rose White believed that she would be able to adopt the Plaintiffs child K.W. before a TRP petition was ever completed or the goal change from Defendants was even granted to be changed to a TRP by the family court judge and before the Plaintiff was even given a fair trial or even determined (unfit) in a court of law a serious infringement of rights of the Plaintiff and her child K.W. by the Defendants.

162. The Plaintiff and her child K.W. lives have been extremely turned upside down by the Defendants with the acts of mental abuse of games the Defendants played for three years none stop with constant disregard for the rights and dignity being the natural parental of K.W. by furtherly punishing this child along with her mother because she would not agree to bogus

mental health diagnoses that were intentionally created with malice fraud and oppression by these Defendants.

163. "Neglect" means a failure to provide, by those responsible for the care and maintenance of the child, proper and necessary support, education as required by law or medical or other remedial care recognized under state law, other care necessary for the child's well-being; or abandonment by his parent or guardian or custodian or subjecting a child to an environment injurious to the child's welfare the Defendant Judith Hardin purposefully and with full knowledge indicated this false finding to the juvenile court know that K.W. was never in an injurious environment at the time she visited the home of the Plaintiff on July7th when she demanded the Plaintiff to take her child to his doctor the next day when she got off work and also proves the child was in fact in no imminent emergency of harm or death at the time in question The Defendant never sought an emergency warrant nor removed the child under emergency that day if it was so he was in an environment that was injurious also by indicating this false finding the Defendant was able to lie to the court and furtherly with knowledge knowing it was not true illegally seized and continued to detained the child K.W. for three years under false finding that was ruled void by the supreme court in the first place.

164. Such conducts Plaintiff and her child K.W. is entitled to punitive damages to punish all of the Defendants listed above and to deter them from such conducts in the near future.

## NINTH CLAIM FOR RELIEF
## NEGLIGENT SPOLIATION OF EVIDENCE: by Plaintiff
## Against the Defendants Felica shell, Stephanie Covarrubias and Devin Dittrich (Individually)

165. Plaintiff allege and to the extent applicable, incorporates herein as if set forth, in each of the foregoing paragraphs.

166. Plaintiff Dawnetta White has been extremely violated in the most heinous, outrageous, wicked and despicable way any parent or human being could ever be when it comes to all the Defendants listed above at all times was acting under color of law and was direct willfully with wanton knowingly and intentionally with an evil indifference created and engaged in fraud and filed a fraudulent TRP petition to have Plaintiffs parental rights terminated by way of fraud. The defendant and her child were punished by the defendants before the TRP was ever actually filed Plaintiff and her child visits were drastically purposefully reduced to once a month for one hour because Defendant's chose to created fraudulent information on a TRP petition to further

infringe on a mother and her child's relationship of familial association rights to be a parent so protected by the Constitution of the United States of America permanently.

167. As direct and proximate result of these individual Defendants listed above owed the Plaintiff a duty of due care to preserve evidence a reasonable person in the defendants position should have known or foreseen that the Exculpatory evidence was material to a potential family court proceeding for termination of parental rights in which was and conspired created and was Intentionally done in the first place therefore the Defendants had knowledge and knew and with willful wanton acted out this act together by destroying evidence they knew would most likely not be favorable to them in the family court TRP trial for termination of the Plaintiffs parental rights.

168. Defendants extremely violated the Plaintiff Fourteenth Amendments rights to the U.S Constitution and also rights to fair Due process to a fair trial when they knew from the very beginning they didn't have evidence to support the lies they intentionally stated on the TRP petition in the first place the supreme court ruled that clear and convincing evidence rather than a mere preponderance were needed to terminate parental rights 455 US 745 (1982). And is always proven innocent until proven guilty by law in a court of law.

169. Defendants also had a duty to properly disclose evidence it will use against the Plaintiff in the family court proceeding or trial as well as any evidence that is favorable to the Plaintiff which is considered a Defendant in the family court proceedings. Defendants duty to preserve evidence began when the state and agency OHU gathered and took possession of evidence as part of the evidence when the Plaintiff was assigned to a case plan back in 2013, and or case worker engaging or completing services and or parental rights trial.

170. Defendants listed above owed Plaintiff a duty of due care to preserve evidence a reasonable person or persons in the Defendants position should have known or foreseen that the executory evidence was material to a potential family court proceeding of termination of parental rights.

171. For this extremely dreadful, outrageous heinous and extremely unlawful acts these Defendants intentionally with pure malice and willful wanton done by these Defendants listed above individually were fully aware and knew that to tamper with exculpatory evidence that is by ( LAW) punishable up to 20 years and is a felony criminal crime, however the Plaintiff and her child endured three years of severe irreversible extreme pain and suffering from all the Defendants listed in this 42:1983 lawsuit subjected to a conspiracy scheme involving fraud and trickery to have a gay mothers only child permanently taken away parental rights terminated with knowingly untrue statements and tampering with evidence destroying evidence manipulating records to furtherly destroy this mother and her child family unit even more and furtherly infringed upon their rights and with more evil and malice acts and created more havoc and injurious and more dreadful damage on this mother and her child which was a family unit before this governmental experiment began all the Defendants in this 42:1983 lawsuit has violated the Plaintiff and her child K.W. on numerous unconstitutional levels of the (LAW) and broken this family unit apart without due process for three years and was done intentionally and with pure malice and willful wanton that has damaged them both extremely and given them no fair due and substantive due process at the hands of these Defendants is purely despicable and heart wrenching and permanently damaging what the Plaintiff and her child has and will continue to

endured as a parent and mother and child has caused a permanent damage and injury such as anxiety, oppression, depression, shock, mortification, indignity anguish fright nervousness and extreme worry plaintiff and her child K.W. should be favored punitive damages due to the Defendants unlawful acts that they knew would or should have known would cause a severe irreversible damage and injury to the Plaintiff and her child K.W. the forced separation of parent from child even for a short time (in this case 18 hours), represents a serious infringement upon the rights of both J.B. v. Washington County (10thCir.1997) but however in this case White V. Department of children and family services et al, OHU public and all induvial state actors involved and listed above including the City of Blue Island officer Haro all three are induvial public entities it has been three years almost four instead of 18 hours in this case which is extremely past a serious infringement and both the Plaintiff and her child has severely suffered at the hands all the Defendant's listed in this 42:1983 lawsuit.

172. Plaintiff should be entitled to punitive damages to punish these Defendants to deter further actions like this in the near future.

### TENTH CLAIM FOR RELIEF
### RETALIATION by: Plaintiff
### Against: Social worker Supervisor Defendant Devin Dittrich

173. Plaintiff allege and incorporate herein, as set forth in full paragraph

174. The Defendant listed above individually is a Social worker Supervisor who engaged in statutorily/ retaliatory protected conduct that was clearly coercion and directed towards the Plaintiff by not agreeing to a mental evaluation done by the Defendant Gladys Croom which was in fact erroneous and purposely misleading the Defendant used intimidation towards the Plaintiff stating she would agree and submit to the evaluation or she would never get her child back when the Plaintiff the declined the Defendant then used such retaliatory acts such as punishments decrease in the Plaintiff visits with her child and took her parent coach services for a year and two months before the petition was ever made filed or ruled upon in a court by a judge.

175. The Defendant also approved and staffed and made a final decision to change the goal to have the Plaintiffs parental rights terminated under knowingly false pretenses due to the retaliatory acts of this Defendant the Plaintiff has extremely suffered anxiety , physical and mental and emotional injury and also her child and will continue to suffer while this Defendant has cost time lost from Plaintiff and her child of reunification and also bonding time this Defendant played a mental head game with the Plaintiff and made an unnecessary termination trial which is all false and fabricated and purposefully motivated by this Defendant has purposefully committing these acts this Defendant was acting under color of law as a direct and proximate result of this Defendants conduct which was done with intentional malice, willful wanton, oppression, and with a very callous and reckless indifference to the rights of the Plaintiff.

176. These actions the Defendant used towards the Plaintiff was motivated by an evil intent such that the Plaintiff is entitled to recover punitive damages in accordance with law and subject to proof at trial.

**ELEVENTH CLAIM FOR RELIEF**
**NEGLIGENCE/MALPRACTICE: by Plaintiff**
**Against Defendant: Social worker supervisor Devin Dittrich**

177. Plaintiff allege and incorporate herein, as set forth in full due to further investigation of the Defendant listed above in this 42:1983 lawsuit.

178. The Defendant Devin Dittrich Social worker supervisor for OHU violated the Plaintiffs Constitutional rights was acting under of law and used an actions of intentional painful scandal of trickery fraud and retaliation towards the Plaintiff to terminate her parental rights but also in fact violated Illinois State law with the Department Division of professional regulation this Defendant is and was practicing in the state of Illinois in social work with the public in child welfare with the organization OHU the Defendant is a licensed Social worker with the state of Illinois.

179. This Defendant however has broken the law stated in these claims into this lawsuit but has in fact has been and is still today breaking State and federal laws due to evidence since November of 2011 this Defendant has been working active duty in Social work to the public and her legal license to practice has been expired 6 years and was expired before the Plaintiff or her child even came into contact with OHU however OHU is an agency that delivers services to individuals and families that have children have been placed in the government system by DCFS this Defendant by law has no right to make parental rights decisions nor tell a client to submit to rigged mental health evaluations nor make any decisions to punish a parent for in means of retaliatory acts and infringing on parental rights violating parents and their child Constitutional rights and when in fact this Defendant is not even legally supposed to be active in social work which is an extremely a huge liability on behalf of OHU who by law is supposed to make sure employees they employed are in compliance with all licensee standards as required by Illinois State law.

180. Social work is an academic and professional discipline that seeks to facilitate the welfare of communities, individuals and societies a practicing professional with a degree in social work is called a social worker held and licensed under that title and is certified by a state board when licensed examples fields of a social worker may be employed in are child protection, mental health, poverty relief, and disabilities in which this Defendant has experience in very directly and is employed by such an organization OHU which is contracted DCFS.

181. Illinois State law Act: The purpose of this act is to protect and benefit the public by setting standards and qualifications ,education training and experience for those who seek to engage in the practice of social work and to promote high standards of professional performance for those engaged in the independent practice of social work in the State of Illinois such practice is here by declared to affect the public health, safety and welfare and should be subject to regulation in the public interest.

182. 225 ILcs20/3(fromch.111,par.6353)section3 .definitions of the following words and phrases shall have meaning ascribed to them in this section unless the context clearly indicates other wise 1".Department" means the department of financial and professional regulation.2"Secretary"

means the secretary of financial and professional regulation. 3"board"means the social work examining and disciplinary board.4"licensedsocialworker" means a person who holds a" valid license" authorizing the independent practice of social work in Illinois under auspices of human services agencies or private nonprofit agencies providing public sponsored human services.

183. "licensed" means that which is required to practice social work under this act "unlicensed practice of social work is a person practicing social work without a valid license shall not be active in duty involving the field of social work and is illegal to do so.

184. This Defendant was negligent at her duty she wasn't even authorized by the law to even be active at the time and today is not even supposed to be active she committed these heinous acts upon the Plaintiff while under color of law this Defendant knew her social worker license was and is till this day expired and she was absolutely prohibited by law not to be on any active duty involving social work with the public and in fact has caused extreme detrimental harm to the Plaintiff in the process OHU has a policy that social workers should be in legal standings with licensees standards with the state of Illinois to be employed in social work fields with their organization in which OHU social workers handles very sensitive information and situations of families and the welfare of children and possible adoptions in some cases but most importantly parental rights recommendations and mental health of families and how a juvenile court would make a decision to either see a parent/parents fit or unfit to their children.

185. As a proximate result of this the Plaintiff has suffered and will continue to suffer anxiety, shock depression, oppression, physical mental, and emotional harm and beyond other injuries so triable to proof at trial and is entitled to be awarded punitive damages to punish this Defendant to deter her from further acts in the near future.


**TWELFTH CLAIM FOR RELIEF**
**DISCRIMINATION ON BIAS OF SEXUAL ORIENTATION: by Plaintiff**
**Against Defendants:Karen Powell, Devin Dittrich, Felica Shell, Judith Hardin,Gladys Croom,Stephaine**
**Covarrubias**

186. Plaintiff allege, and incorporate herein, in full set forth paragraphs of this 42:1983 lawsuit.

187. At all times under color of law at all times applicable herein, Defendants listed above had a duty by law and violated the Plaintiffs Fourteenth Amendments rights to be free from discrimination of her sexual orientation as a parent in a child custody case involving the Department of children and family services and its contracted agency organization OHU employees.

188. The United States Constitution has clearly established protection for this Plaintiff to be free from discrimination of any sort of discrimination such as sexual orientation, age, race, and religion beliefs are so clearly established by the Constitution of the United States of America.

189. 5A Discrimination on the grounds of sexual orientation (1) for the purposes of this act, a person the discriminator discriminates against another person the aggrieved person on the grounds of the aggrieved person's sexual orientation.

190. by, reason of: (a)the aggrieved persons sexual orientation: (b)a characteristic that appertains generally to persons who have the same sexual orientation as the aggrieved person: (c) a

characteristic that is generally imputed to persons who have the same gender identity as the aggrieved person: the discriminator treats the aggrieved person less favorably than, in circumstances that are the same or are not materially different , the discriminator treats or would treat who has different gender identity.

191. (2) For the purposes of this Act, a person the discriminator discriminates on the ground of the (the aggrieved person) on the ground of the aggrieved persons gender identity if the discriminator imposes, or proposes to impose, a condition, requirement or practice that has, or is likely to have, the effect of (disadvantaging) a person or persons who have the same gender identity as the aggrieved person.

192. The Plaintiff is and was a person whom identifies with a sexual orientation of the same sex when her child was illegally removed by the department of children and family services Defendant Judith Hardin and placed with the Plaintiffs friend whom is also identifies herself as a person with sexual orientation of the same sex.

193. This Defendant had no knowledge of this prior to placing the child with the Plaintiff friend in the beginning once the Plaintiffs mother informed the Defendant about how uncomfortable she was about the child being around his mother the Plaintiff (GAY) friends the Defendant Judith Hardin and without hesitation removed the child from the residence of the Plaintiff( GAY) friend not because the child was in any danger or harm but simply this Defendant was told by the Plaintiff mother that her friend the child was placed with was also gay.

194. Defendant Stephanie Covarrubias lied/ used perjury to the juvenile court on several occasions and used different terminologies that Cleary shows that the Plaintiff now eight-year-old child has some bias towards his mother the Plaintiff for her appearance, she dresses in men's clothes in which the child never had before being placed in the wardship of DCFS and his grandmother the foster parent who placed the hotline call in the first place in which on court transcript lied and told the judge that the child told her he didn't want to return home with his mother because( he was uncomfortable about something's). which was false that fact is she was uncomfortable instead but lied on the child. children don't see clothes or the way their parents dress they see love instead in which the Plaintiffs child always have.

195. The Defendant Karen Powell also in fact knew the Plaintiff was gay and when the Plaintiff was sexual harassed by the former social worker( who was a man) and also knew the Plaintiff was Gay and made comments to the Plaintiff about how she dressed in men's clothes decided to sexual harass the Plaintiff the Defendant after the fact was fired from OHU for his despicable conduct toward the Plaintiff the Defendant was callous and insensitive towards the Plaintiff simply telling her to get over it and didn't immediately rectify what happened and take it more seriously and remove the social worker from the Plaintiffs case whom remained her social worker and was fired once they were able to place the Plaintiff with a new worker.

196. The Plaintiff was sent by Defendants listed from OHU to a private residence of the Defendant Gladys Croom to have a psychological evaluation done ''psychological evaluation'' is defined as a way of testing people about their behavior, personality, and capabilities when the Plaintiff met with the Defendant Gladys Croom the Plaintiff was immediately asked about her being sexually abused as a child and her sexual orientation as well in which the Plaintiff never shared this

information with this Defendant in the first place and was forced and very uncomfortable to share it in which was shared by DCFS and OHU with this Defendant instead.

197. The Defendant Gladys Croom prior to and before an evaluation even began to make statements of recommendations to the Plaintiff that she would benefit more from group therapy with a LGTB setting before she even made any diagnoses or properly evaluated this Plaintiff in which the Plaintiff was solely sent there to have a mental evaluation done only and not a sexual orientation recommendation this Defendant was very bias toward the Plaintiff and very inappropriate by even sharing her own personal information about her sexual orientation as well in which in no way stripe had nothing to do with the reason this Plaintiff was even sent to the Defendants private apartment in the first place.

198. Sexual Orientation means a person sexual identity to relation to the gender in which they are attached : The fact of being heterosexual, homosexual, or bisexual in which has nothing to do with a psychological evaluation at all the Defendant used the statement of recommendation for therapy in an LGTB setting as a bias toward the Plaintiff therapy should be therapy regardless of one's sexual orientation and shows this Defendant felt that the Plaintiff needed ( therapy) for her sexual orientation instead.

199. All of these Defendant listed above was made aware since day one of the Plaintiff sexual orientation by the Plaintiffs mother who highly has a very strong bias towards her daughter for being gay and being gay while with child and let alone even made statements that she would also make her child gay also or was trying to these Defendants engaged with the Plaintiffs mother and used their acts of bias of indifference towards the Plaintiff which is a violation of the Plaintiffs Fourteenth Amendments rights to the Constitution of the United States of America to be free from discrimination exclusively.

200. The Defendants listed above have used immoral and unlawful tactics see 42:1983 claims in their actions of bias towards the Plaintiff by using mental abuse, intentional traps of disadvantage, framing, fraud, fabrication vilifying, intimidated by deck stacking and using retaliatory acts of suffering by decreasing visits parental infringement in the most heinous ways with the Plaintiff and her child then to even state this plaintiff showed her child no interest welfare and concern to have her parental rights terminated shows clear high levels of pure incompetence and disregarded fairness and instead used pure malice and willful wanton in which these Defendants with willful wanton malice clearly inflicted upon this family are unconstitutional and immoral.

201. The Plaintiff and her child have extremely suffered at the hands of these Defendants and are continually suffering till this day the Defendants have caused mental harm to the Plaintiff and her child invoking her child to have a bias towards his mother because of her appearance in which the child never did prior to being in wardship of DCFS.

202. These Defendants breached their duties to the Plaintiff using trickery scheme and conspiracy because of their bias of discrimination toward the Plaintiff a direct and proximate result of these Defendants violations and in accordance with 42 U.S.C.1983 the Plaintiff and her child civil rights have been violated in that they have tremendously suffered and will continue to do so.

203. The Plaintiff has suffered and to this day continue to have injuries of shock, humiliation, anxiety, stress, depression mental and emotional aguish and loss of dignity as a parent and a human being these Defendants knowingly acted with wanton, malice and with the intent to cause and

have caused harm and injury to the Plaintiff in a despicable and vile heinous and outrageous manner therefore the Plaintiff is entitled to the an award of punitive damages for the purpose of punishing the Defendants and to deter them from such conducts in the near future.

**THIRTEENTH CLAIM FOR RELIEF**
**UNLAWFUL TERMINATION OF PARENTAL RIGHTS VIOLATION OF FOURTEETNH AMENDMENT RIGHTS TO DUE PROCESS RIGHTS**
**against Defendants: All individually listed above including its entities Department of children and Family Services and One Hope United**

204. Plaintiff allege and incorporate herein, as set forth in all full paragraphs that all actions listed above and each individual Defendant listed above was at all times acting under color of law had a duty to give a proper Due process involving the Plaintiffs parental rights in which is protected and it is clearly established by the United States Constitution under the Fourteenth Amendment, the Due Process clause before a state may sever completely and irrevocably the rights of parents in (p.748) their natural child due process requires that the state support its allegations by at least clear and convincing evidence.

205. Under Illinois law the state may terminate over parental objection the rights of parents in their natural child upon finding that the child is permanently neglected''.(1) Process is Constitutionally due a parent at a state-initiated parental rights termination proceeding.Pp753-757 (a) The fundamental liberty interest of natural parents in the care custody and management of their child is protected by the fourteenth Amendment and does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the state. A parental rights termination interferes with that fundamental liberty interest when the state moves to destroy weakened familial bonds, it must provide the parents with fundamentally fair procedures. Pp752-754.

206. (b)The nature of the process due in parental rights termination proceedings turns on a balancing of three factors: the private interest affected by the proceedings; the risk of error created by the states chosen procedure; and the countervailing government interest supporting use of the challenged procedure. Mathews v.Eldridge,424U.S319.335. in any given proceeding the minimum standard of proof tolerated by the due process requirement reflects not only the weight of the public and [p746]private interest affected but also a societal judgement about how the risk of error should be distributed between the litigants the minimum standards is a question of federal law which this court may resolve. Retrospective case-by-case review cannot preserve fundamental fairness when a class of proceedings is governed by a Constitutionally defective evidentiary standard.Pp.754-757.

207. The fair preponderance of the evidence standard prescribed by 622 violates the due process clause of the fourteenth Amendment Pp758-768 (b) a preponderance standard does not fairly

allocate the risk of an erroneous fact-finding between the state and the natural parents. In parental rights termination proceedings. which bear many of the indicia of a criminal trial numerous factors combine magnify the risk of error nearly equally between an erroneous failure to terminate which leaves the child in an uneasy status quo and an erroneous termination which unnecessarily destroys the natural family, does not reflect properly the relative severity of these two out comes. At the fact finding hearing the state must have established among other things that for more than a year after the child entered the state custody the agency made diligent efforts to encourage and strengthen the parental relationship. Fam.Ct.Act 614.1(c),611. The state must further prove that during that same period, the Childs natural parents failed substantially and continuously or repeatedly to maintain a permanent plan for the future of the child although physically and financially able to do so.

208. 614 .1(d). should the state support its allegations by affair preponderance of the evidence, 622 the child may be declared permanently neglected [p749]611 that declaration empowers the family court judge to terminate parental rights 631(c),634 termination denies the natural parents physical custody, as well as the right ever to visit communicate with or regain custody of the child however once a is removed a child under age of 18 customarily is placed in care of authorized agency , Soc.Serv.law384-.b.7.(a) at that point the state's first  obligation is to help' 'the family with services to reunite it...384-b.1.(a)(iii) but if convinced that positive , nurturing parent -child relationship no longer exist, 384-b.1.(b) the state may initiate permanent neglect proceedings to free child for adoption.

209. The court has mandated an intermediate standard of proof – "Clear and convincing evidence "—when the individual interest at stake in a state proceeding are both "particularly important and more" substantial than mere loss of money " Addington v. Texas, 441U.S at424. Notwithstanding the states civil labels and good intentions, id.at 427, quoting in re winship, 397 U.S.at 365-366, the court has deemed this level of certainly necessary to preserve fundamental fairness in a variety of government -initiated proceedings that threaten the individual involved with a significant deprivation of liberty or stigma"441U.Sat425,426see, e.g. Addington v. Texas, supra,(civil commitment);Chaunt v. Untied States,364 U.S.at 285(deportation);Chaunt v .United States, 364U.S 350,353(1960)(denaturalization);[p757]Schneiderman v. United States,320 U.S.118,125,159,(1943)(denaturalization).

210. Due to evidence and factual allegations of fraud, discrimination, retaliation, and constitution violations Defendants has used upon the Plaintiff see claims……. with malice and evil indifference under claims in this 42:1983 lawsuit to redress in Defendants evil wicked plans of conspiracy was unfortunately successful with their scheme for Termination of the Plaintiffs Parental rights in

211. which has increased damages to the Plaintiff and her child K.W. and it was done just five days after the Plaintiff child turned ten years old and September 23,2016 the Plaintiff child K.W. birthday was the last visit the Plaintiff and her child had for one hour due to the termination of the Plaintiffs parental rights the judge constantly violated the Plaintiffs due process rights during the whole trial process please view evidence. (transcript)

212. Carson v.Elrod, no bond is more precious and none should be more zealously protected by the law as the bond between parent and child.411FSupp645,649;DC E.D. VA(1976)

213. The due Process clause of the Fourteenth Amendment requires that severance in the parent-child relationship caused by the state occur only with rigorous protections for induvial liberty interest at stake the parent -child relationship is a liberty interest protected by the Due Process Clause of the 14th Amendment.746 f 2d 1205, 1242-45; US Ct App7thCirWI (1985).

214. Doe v. Irwin (US. D. of Michigan 1985) The rights of parents to the care custody and nurture of their children is of such character that it cannot be denied without violating those fundamental principles of liberty and justice which lie at the base of all our civil and political institutions, and such right is a fundamental right protected by this amendment (First) and Amendments 5, 9, and 14.

215. Malik v. Arapahoe Cty. Department of Social Services (10th Cir. 1999) Absent extraordinary circumstances, a parent has a liberty interest in familial association and privacy that cannot be violated without adequate pre- deprivation procedures.

216. State employees who withhold a child from their family may infringe on the family's liberty of familial association. Social workers could not deliberately remove children from their parents and place them with foster caregivers when the officials reasonably should have known such an action would cause harm to the child's mental and physical health.

217. J.B. v. Washington County (10th Cir. 1997) The forced separation of parent from child, even for a short time (in this case 18hours), represents a serious infringement upon the rights of both.

218. Morris v. Dearborn (5th Cir. 1999) Right to Procedural Due Process Violated: The State denied the Plaintiff the fundamental right to a fair procedure before having their child removed by the intentional use of fraudulent evidence during the procedure.

219. Lassiter v. Department of Social Services (1981) State intervention to terminate the relationship between a parent and a child must be accomplished by procedures meeting the requisites of the Due Process Clause. 452 US 18, 37.

220. Santosky v. Kramer (102 S.Ct.1388 1982) Even when blood relationships are strained parents retain vital interest in preventing irretrievable destruction of their family life; if anything, persons faced with forced dissolution of their parental rights have more critical need for procedural protections than do those resisting state intervention into ongoing family affairs. The Supreme Court ruled that Clear and Convincing evidence rather than a mere preponderance were needed to terminate parental rights.

221. Stanley v. Illinois (92 S. Ct. 1208 1972) The Court stressed " the parent -child relationship is an important interest that undeniably warrants deference and, absent a powerful countervailing interest, protection.' A parent's interest in the companionship, care custody and management of his or her child rises to a Constitutionally secured right, given the centrality of family life as the focus for personal meaning and responsibility. 405 US 645 651; 92 S Ct 1972.

222. Meyer v. Nebraska (43 S.Ct .625 1923) Parents rights have been recognized as being "essential to orderly pursuit of happiness by free man " 262 US 390;43 S,Ct, 625(1923).

223. Langton v. Maloney (527 F sup 538, D.C. Conn 1981 The liberty interest of the family encompasses an interest in retaining custody of one's child and thus a state may not interfere with a parent's custodial rights absent due process protections.

224. Gross v. State of Illinois State Judges as well as Federal, have the responsibility to respect and protect persons from violations of federal constitutional rights.

225. These Defendants should have known that Due to their wicked and evil indifference to a higher level of malice and conspiracy involving trickery, fraud, discrimination, retaliation, and among other methods to infringe upon and constantly violate the Plaintiff and her child K.W. Constitutional rights would cause a more detrimental and irreversible damage to them that the Plaintiff and her child K.W. will need professional counseling for the rest of their natural lives.

226. As proximate result of this the Plaintiff and her child have suffered even more extreme damages and will continue to suffer a child who has been forced at separation while a very serious significate damage to an extreme level K.W. has and is continuing to suffer The Plaintiff levels of damage has risen to the point of traumatic and extremely higher levels of suffering damages of thoughts of suicide, anxiety, panic attacks, sleepless nights, depression, oppression, mental physical and emotional damages mental anguish and beyond other injuries so triable to proof at trial .

227. The despicable inhumane acts of these Defendants have caused a serious and irreversible damage to the Plaintiff and her child and should be entitled to be awarded punitive damages and any other specials damages this court sees fit for this claim to punish these Defendants to the highest extent of the law and to deter them from such despicable acts in the near future.

### JURY DEMAND

### Plaintiffs, DAWNETTA WHITE demand a jury trial as to all issues so triable.

### PRAYER

WHEREFORE, Plaintiff, Dawnetta White or Dawn and K.W. prays for judgment against Defendants, as to all causes of action, as follows:

1. General Damages and special damages according to proof, but in no event less than 10,000,000,
2. As against only the individual Defendants and not municipality, compensatory damages or other compensation awards as allowed by law;
3. Attorney fees pursuant to 42:1983U.S.C.&1988 and any other appropriate statue;
4. Injunctive relief, both preliminary and permanent, as allowed by law, (including preliminary injunctive relief to be based upon a separate application.
5. Costs of suit incurred herein; and
6. Such further relief as the court deems just and proper.

Dated: October 3,2016
Respectfully: by Plaintiff, DAWNETTA WHITE



Illinois Department of Financial and Professional Regulation

# Lookup Detail View

Contact

| Name | City/State/Zip | DBA/AKA |
|------|----------------|---------|
| DEVIN MARIE DITTRICH | Midlothian, IL 60445-3124 | |

Contact Information

License

| License Number | Description | Status | First Effective Date | Effective Date | Expiration Date | Ever Disciplined |
|----------------|-------------|--------|----------------------|----------------|-----------------|------------------|
| 150010417 | LICENSED SOCIAL WORKER | NOT RENEWED | 03/01/2006 | 11/09/2009 | 11/30/2011 | N |

License Information

Generated on: 9/1/2016 3:21:45 PM

